and we'll hear Taylor v. Manheim. Thank you very much. Good morning. May it please the Court. I'm Annette Hesapides, appearing for the Plaintiff Neville Taylor. Respectfully, the lower court erred in granting summary judgment in this for the defendant to have remedied it with the exercise of reasonable care. There's a line of cases in New York that have been adopted by the district courts in Tuttle and Cruz and Lacey that holds that where the defendant has failed to perform any inspections or there's a question whether or not the inspections were reasonable, constructive notice is imputed and the plaintiff need only prove that a reasonable inspection would have disclosed the defect in time to remedy it. In this case – That's exactly my problem. Let's assume that there is enough evidence so that one could decide as a matter of law that no inspection was taken. And let's assume that that is enough to cover whatever constructive notice requirement is, but where do you have any evidence that if a reasonable inspection had taken place, this would have been seen? Because would it have been reasonable for somebody to inspect for ice after 68 hours, not traversed, of more than freezing temperature on a day when the temperature was 63 in the in his T-shirt until noon, so the time when it would have been reasonable for an inspection to take place, if it was cold, there's no evidence that it was cold. The evidence was it was hot then. So why would an inspection that would have shown this, what evidence is there of that? Well, there were two failures to inspect and maintain here, Your Honor. You're referring to the first one with respect to the failure to perform even a reasonable inspection with respect to ice. I'd point out that there's no evidence in the record as to when the lots had last ever been inspected. No, I understand that. I understand that the temperatures that day were high enough, and why would it be reasonable? But the other shortfall here was that the defendant also admitted that they had never maintained the lots. This was a gravel lot, and our expert pointed out that gravel needs to be replenished on a regular basis when you're driving vehicles and when you're clearing snow. These lots had never been replenished for gravel. The defendants, I would point out, never proffered any evidence in reply from their witness, Dale Miller, the manager, to say anything with respect to the replenishment of gravel. The problem with that, the reason why I interrupt you because you're focusing on the gravel thing, is your client says that he slipped on ice that had gravel in it, and so he identifies seeing gravel present. Now, let me finish. Seeing gravel present. Now, then your expert says, well, there couldn't have been gravel there. He slipped on something that was oil. It wasn't ice at all that your client was misinformed. Well, so then it seems to me that your expert didn't go and inspect where he fell, right? No, this was a transient condition. No, he didn't inspect. He couldn't have. So all you have is you have evidence, you can't run from it, that there's gravel there. So I don't know how the — I don't know how you can claim the failure to replenish gravel is part of their negligence. A, I don't think ice is any longer in it, if you're going with your expert and not your client's eyewitness testimony. But if you — then you're going to ask the jury to disregard his earlier characterization that there was gravel there, that he was mistaken? Well, he doesn't say that it was — he doesn't say precisely that. I would refer the court to page 174, and he says, how would you characterize — he's asked, how would you characterize the surface, smooth, choppy, bumpy? And he says it's smooth with gravel. With gravel. It — gravel — I didn't say without gravel. He said with gravel. But he says it's smooth. It's a smooth surface that he slips on with gravel. There's no evidence that they ever replenished the surface. So — Why does he say with gravel? With gravel means that smooth with, also, gravel. That's what I understand the word with to mean. Yes, but — Well, in other words, where is the evidence that the situation would have been in any way different had they done what you are saying was their negligence in not doing, replacing with gravel? Yes. Okay. This area was near the mechanic's shop, as — according to the testimony on page 179. Had they replenished it with gravel, and as our expert opined, had it been properly replenished with gravel, the surface would not be smooth. It would be — there would be traction, and our client — my client would not have slipped on the surface. Yes, there was — there was — there was gravel, but he also described it as what he thought was a sheet of ice with some gravel in it, and it was smooth. And drawing the inferences in favor of my client, the conclusion here is that had gravel been replenished, then the surface wouldn't have been smooth, and he would not have slipped. If there was gravel on the surface, he would not have slipped. That's the entire purpose of gravel. And I would further point out that this is the summary judgment stage. This is whether or not there's enough evidence here for a jury to resolve the issue of fact. This is not post-verdict where we're asking you to review the fact finder's determination. And the fact that the surface was smooth, and my client described it as a 6-foot-long patch of ice with — that was smooth with gravel in it, could lead a jury to conclude, coupled with the admission that there was never any maintenance of the lots — But you're saying that it could lead a jury to conclude that if they had placed gravel regularly, as you are claiming they should have done, then there would have been a different surface from the one on which he actually — he says he slipped. Correct. When Mike — Although he says he slipped on ice. Yes. He — that — and that was his perception. It was frozen ground, which, you know, the defense has raised an issue about that. But frozen ground, I mean, to him it was a sheet of ice. And there's no difference there. It's a defective condition that stems from an admitted — Where is it? Can you — I'm sorry. Where is there evidence that he slipped because the gravel was not adequate? Well, my client described it as a 6-foot-long sheet of ice with — that was smooth with gravel in it. That is the evidence that we have on this record. And that is — Is that enough to say that if there had been enough gravel, he would not have slipped? Yes. Our engineer's testimony is unrebutted that had the parking — the lot been replenished properly, particularly after the thousands of vehicles being driven over it and the plowing, that there would have been enough traction in the ground. And again — The engineer's premise is that there was no gravel there, that it had been — that it had been stripped away. And so, therefore, the oil was on a piece of dirt or it was on — it was on an area that was completely smooth. Well, because he — I mean, that's his premise, but it's inconsistent. I don't know how that expert could render that opinion during a trial when it's inconsistent with your own client's characterization of what he slipped on. Because my client characterized it as a smooth surface with gravel in it. With gravel. Right. I know. I mean, if he hadn't said with gravel, I'm with you. But he said with gravel. I mean, I don't understand how you can characterize the failure to regravel the area when your More gravel, less gravel. I mean, you know, typically in your slip and fall case, you have a picture, you have some kind of characterization, uneven surface. You can identify something. This is a location. It all comes to you after the fact, it's not your fault. It's transient condition. I mean, you've got to go with what you've got, right? Right. But in any event, I mean, there's a real disconnect between your expert's opinion and your own client's characterization of where he fell. But if my client describes the surface as smooth with gravel in it, a reasonable construction of that is that it was in fact a smooth, flat surface and that there were pieces of gravel in the surface, but nothing had been regraded. My basic problem is you have shown evidence of negligence, but you haven't shown evidence that the particular kind of negligence that you have shown was causally related to what actually happened. Because if there was negligence, but there was gravel, then you have to show that more gravel would have made a difference, and it's very hard for me to see that. Maybe I'm missing something. I would like to reserve the rest of my time for my rebuttal. Thank you. Thank you.  Good morning, Your Honor. Good morning, Your Honors. Karen McCarthy for Defendant Aptly, Mannheim Remarketing. I'm with the firm of Lawrence Worden, Raines and Bard. In Gustafson v. Target Corporations, court instructed— Sorry, speak right into the microphone. Sorry, Your Honor. There you go. In Gustafson v. Target Corporation, this court instructed that it'll affirm summary judgment where the record taken as a whole could not lead a rational trier of facts defined for the non-moving party. Addressing the comments made by Your Honors, we agree that the evidence is insufficient to show that the testimony—the only direct evidence here is the testimony of the plaintiff. The plaintiff testified that he slipped on a solid sheet of ice that was dry. His clothing did not get wet when he fell on it. In response to expert— In the expert's conclusion, it's an oil slick. Well, I was going to— It's mixed with water, right? In response to expert discovery that showed that the temperature was above 65 degrees and above freezing for some 36 hours before the accident, both experts, plaintiff's expert as well, opined that the presence of ice was impossible. In addition, both experts concluded that the ground surface would have been wet. Given this discrepancy, Taylor changed his story of the solid ice to a surface that was wet and slick with oil deposited by the vehicles that were driven through the lot. There was no evidence in the record of any oil—of any cars leaking oil. Plaintiff requests that this Court exercise its additional notice, but— Well, it's a big—Manheim's a big operation, right? That's correct, yes. It's 48 acres. It's the largest auto—at least the one—Operation Pennsylvania's the largest auto auction in the United States. So there's lots of cars there. Cars do leak oil. When my daughter was in high school, I used to get furious with her classmates because two or three of their cars were regularly depositing oil on my driveway. I didn't like it. So if you've got a lot of cars, you're going to have some oil on the ground, aren't you? Well, there's no evidence in this case. And the discovery— Well, the answer to that is yes, but the problem is— Yes. And what the plaintiff characterizes is how he fell. Agreed, Your Honor. There's no evidence that that particular spot— which is plaintiff's burden to show that the particular spot where plaintiffs fell— The strongest argument that plaintiff makes is that your client did not adequately replace gravel and that if the gravel had been replaced, then this surface would not have been one on which her client fell. That's the strongest argument that she is making. I'm not sure—tell me how you meet— In the first place, we dispute that there was any proof that this dangerous condition of a lack of gravel sufficient to render the surface slippery with oil and water ever existed. There's no proof of that. The plaintiff's testimony is materially different from the expert's interpretation of that testimony. Therefore, the expert's conclusion that if the surface had been completely covered with gravel, plaintiffs would not have slipped is— The expert, in essence, says the fellow didn't appreciate what it was he did step on. And he characterized it as ice, but the reality of it was it probably wasn't ice. It was something else. It was more likely a bare spot that was discolored and that there was oil on it because of the fact that there are lots of used cars around there and that there was oil on the ground. He doesn't tie that to anything that's deposited on the fellow's pants or anything. The fellow says that it wasn't wet, so there's an inconsistency there. But in essence, the expert says he didn't appreciate what he had fallen, what had caused him to fall. Agreed. Again, our premise is that the plaintiff has not demonstrated that this defective condition existed. Assuming that it did— During your discovery, was there an attempt to— No. Let me finish. I'm sorry. You don't know—I could have fooled you up and changed the question so that the answer should have been yes. During the discovery, was there any request to identify similar accidents in the parking lot? Yes, there was an attempt, and it failed. There were no similar accidents. The plaintiff himself testified he had never fallen. There are no accidents of that type in that area. So then there is no ability to claim constructive notice in the context of prior accidents? None. And frankly— With respect to oil and gravel. Right. With respect to ice, it would be a different thing, but ice is now out of the picture. That's correct. I do want to address Judge Calabresi's questions regarding the expert's opinion. If we're assuming that this condition did exist, and our position is there is no proof of that, the circumstantial evidence is far too weak. But assuming that it did, is that enough of a connection? Can we make this link that the defendant's negligence, assuming the condition existed, was enough to get to the jury the expert's opinion that had the surface been completely covered with gravel, then the accident would have happened? Our position is that opinion is highly speculative. We did not retain an expert to rebut the position because there was no proof that the condition existed in the first place. To have retained an expert to rebut it would have been, in our opinion, tantamount to acknowledging the condition existed. And there's no proof that it did. With respect to the opinion itself, the expert relies on a completely irrelevant report from the Federal Highway Bureau saying that you have to replenish gravel on highways because the cars will displace the gravel over the shoulders and down the sides of whatever the embankment was in that particular example that was being discussed in the article. That's highly irrelevant to this situation. There is no, there are no regulations requiring that a 48-acre lot storing vehicles, this is not an area that is open to the public. If we're talking towards it's not a matter of regulation, it's whether a reasonable person over 40 acres would do that. You don't need to overstate by citing regulation. All you need to do is say a reasonable person wouldn't be doing that. That is something that we don't have any hard evidence of, but yes, I think that the reasonableness of that is apparent, the unreasonableness of that is apparent. We also want to point, we also would like to point out that the plaintiff relies heavily on cases pretty much, in particular, they rely on Cruz versus Target to argue that a failure to inspect is a means for establishing constructive notice. In the first place, Cruz is contradictory to the established case law that says you have to show that not only did the defendant fail to inspect, but that a reasonable inspection would have prevented the injury. Going to the expert's opinion that the 48 acres had to be completely covered with gravel such that no bare spot smaller than a shoe could exist, that would still require the plaintiff to prove that that was what was going to happen. They have not done that. And we'd also like to point out that Judge, that Magistrate Reyes, who wrote the opinion, reversed himself subsequently in the Young versus Morrison case where he then said that plaintiff could not establish in length of time that the condition was there to be discovered and therefore that the plaintiff had failed to show that a reasonable inspection would have prevented the injury. Very briefly, we just would like to address the plaintiff's counsel's comments that we dehoard the record. We did no such thing. With respect to our hypothetical questions, we asked the plaintiff's comments to the expert as to whether or not he had considered any other bases for the plaintiff's fall, such as if the plaintiff had reported to his medical providers that he had fallen off the step of his truck, did the plaintiff consider that? We weren't speaking to the statements in the medical records to prove the truth of those statements. We were just using them to ask the expert whether he had considered any other reasons why the plaintiff had fallen. And we'd also like to point out that those statements are, in fact, in the record. Your time is up. Bring it to a close. Okay. Thank you. If there are any other questions? Thank you. I'd like to make a few points, if I may, in rebuttal. First, the plaintiff never has changed his testimony. He made no attempt to recant his testimony at his deposition. Plaintiff's expert has spoke to the plaintiff's mistaken belief that it was frozen ground as opposed to ice. Second, Mr. Krongelb did not cite the fact that there were fluids leaking from vehicles as anything except further corroborative evidence that the surface was slippery. In other words, you know, this is an auto auction lot. As Your Honor pointed out, there are thousands of vehicles there. He also opined not that a surface has to merely be replenished with gravel, but that a layer of gravel is what is required to prevent someone from slipping and falling. I'd refer the Court to page 641. What evidence is there that when you own 40 acres or whatever this is, and there is some gravel, that a reasonable person would put enough gravel so that even under reading your expert's testimony most favorably to the way you would do it, that a reasonable person would have put gravel to a degree that this injury would not have occurred? Well, in answering that question, I would correct counsel's statement that this was simply an auto lot. Mr. Miller testified at page 317 of the record that there were auctions held on the property twice per week with at least 1,000 people on site. Knowing that you have 1,000 people traversing your property twice a week requires that you regrade, replenish gravel, and ensure that it's reasonably safe for people who are traversing the lots to look at vehicles and determine whether or not to purchase them. So it is a 48-acre lot. My client's accident occurred near the mechanic's shop. So this is not as if this was on the periphery of 48 acres. This was near the mechanic's shop. They knew that thousands of people are on site twice per week, and yet there is no evidence that they ever did anything to make their property reasonably safe. Finally, I'd point out that the reference to the Federal Highway Safety Standards are again corroborative proofs supporting Mr. Krongelb's opinion that gravel needs to be replenished and services need to be regraded when you have vehicles traveling over them and when you're plowing snow. There was no effort here to analogize this to a federal highway. It's further corroborative evidence. And again, I would refer the Court back to the fact that this is a summary judgment proceeding. The inferences must be construed in my client's favor. My client did not testify that it was a gravel lot. He testified that he slipped on a 6- or 7-foot-long patch of ice that was smooth with gravel. And on that, I'd rest. Thank you. Thank you. Thank you both. We'll reserve decision. And that being the last case, we stand adjourned.